**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Elkins**


**MARK WATKINS**,

        Petitioner,

    v.                                  **Civil Action No. 2:13-CV-67**
                                                Judge Bailey

**RUSSELL PERDUE**, Warden,

        Respondent.


**ORDER ADOPTING REPORT AND RECOMMENDATION
AND GRANTING GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**

      Pending before this Court is the Respondent's Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause [Doc. 13] and the Report and Recommendation filed on July 29, 2015 [Doc. 25]. By Local Rule, this action was referred to Magistrate Judge Kaull for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Kaull filed his R&R on July 29, 2015, and recommended that this Court grant the respondent's motion for summary judgment and deny the writ of habeas corpus.

      Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140,

1

150 (1985).  In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order.  28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984).  Here, objections to Magistrate Judge Kaull's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  The petitioner timely filed his objections [Doc. 27] on August 14, 2015.  Accordingly, this Court will conduct a *de novo* review of the portions of the magistrate judge's R&R to which the petitioner objects.  The remainder of the R&R will be reviewed for clear error.

## I.  Facts[1]

### A.  Conviction and Sentence

On May 12, 1994, a Grand Jury sitting in the United States District Court for the Northern District of West Virginia returned an indictment against the petitioner and two other defendants.  The petitioner was named in the first five counts of the indictment.  Count One charged the petitioner with conspiracy to knowingly and intentionally possess with intent to distribute and to distribute cocaine, also known as "coke," a Schedule II, narcotic drug-controlled substance in violation of Title 21, U.S.C. § 841(a)(1).  Count Two charged the petitioner with killing Debra Pugh with the intent to prevent the communication

---

[1] Because this case is so old, documents are not available on CM/ECF. Although the Clerk of Court had retrieved the case file, the petitioner's co-defendant has filed an appeal of the denial of his § 2255 motion.  Accordingly, the file was transferred to the Fourth Circuit.  To the extent that the petitioner and respondent did not provide exhibits, the undersigned has relied on documents available on Westlaw, and portions of the official file which were copied before being sent to the Fourth Circuit.

by Debra Pugh to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offenses of drug conspiracy, drug distribution and extortion committed and possibly committed by him in violation of 18 U.S.C. §2(a), §2(b), §1512(a)(1)(C) and §1512(a)(2)(A). Count Three charged the petitioner with interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. §1952(a)(2) and (3). Count Four charged the petitioner with conspiracy to commit offenses against the United States as more particularly described in Counts Two and Three in violation of Title 18 U.S.C. § 371. Finally, Count Five charged the petitioner with conspiring to injure, oppress, threaten and intimidate Debra Pugh in the free exercise and enjoyment of her right secured and protected by the Constitution of the United States to provide information to federal authorities and to be a witness in a federal proceeding relating to her knowledge of the commission and possible commission of federal offenses relating to drug conspiracy, drug distribution and extortion committed by him in violation of 18 U.S.C. § 241. [Doc. 1-3].

On February 17, 1995, following nine days of trial proceedings, the petitioner was found guilty of all five counts. On May 24, 1995, the petitioner was sentenced to life imprisonment on each of Counts 2 and 5 (concurrent); two hundred forty (240) months on Count 1 (concurrent with sentence on Counts 2 & 5) and sixty (60) months on each of Counts 3 & 4 (concurrent with each other and sentence on Counts 1, 2 & 5).

**B.  Direct Appeal**

The petitioner filed an appeal with the United States Court of Appeals for the Fourth

Circuit raising thirteen assignments of error.[2]  The petitioner's ninth ground of appeal, and the only one that the Fourth Circuit found had merit was that the District Court erred when it failed to order the government to elect between Counts Four and Five. As previously noted, Count Four charged the petitioner with conspiracy to kill an informant in violation of 18 U.S.C. § 371.  As this Count constituted the conspiracy to commit the offense charged in Count Two, the elements of the conspiracy which must be proved were set forth in 18 U.S.C. § 1512(a).  Count Five charged the petitioner with conspiracy to violate the civil rights of the victim in violation of 18 U.S.C. § 241.  The Fourth Circuit noted that to prove the elements of Count Four, the Government must show that the petitioner engaged in a conspiracy to kill the victim with the intent to prevent her from communicating to a law enforcement officer of the United States information related to the commission of federal crimes.  To prove the elements of Count Five, the Government must show that the defendants conspired to injure, threaten, and intimidate the victim in the exercise of rights guaranteed her under the Constitution to provide information concerning federal offenses. The Fourth Circuit went on to note that the Double Jeopardy Clause of the Constitution prohibits cumulative punishments for the same offense, and concluded that while Count Four required proof that the victim intended to go to a federal law enforcement officer, Count Five only required proof that the victim intended to go to some law enforcement officer.  Because only one statute required proof of an additional fact, the Fourth Circuit concluded that the petitioner, who received concurrent life terms on both counts Two and

_____

[2]  The appeal was in fact jointly filed by petitioner and his codefendant, Delmar Walton.  However, the undersigned has used just "the petitioner" in discussing the decision issued by the Fourth Circuit.

Five, was subject to multiple punishments for the same offense. Therefore, the Fourth Circuit determined that the District Court erred when it failed to order the Government to elect between counts. Accordingly, the Fourth Circuit remanded the case to the District Court on that ground of appeal, with instructions to vacate the petitioner's conviction and sentence on Count Five. However, because the petitioner received concurrent life terms on Counts Four[3] and Five, resentencing was not necessary.

## C. Motion To Vacate

On July 10, 1997, the petitioner filed a motion pursuant to 28 U.S.C. § 2255. As grounds for relief, the petitioner raised the issue of the racial composition of the grand jury. In addition, the petitioner alleged that the indictment failed to allege overt acts of drug dealings and that the instructions on conspiracies were ambiguous. He also alleged that Counts One, Three and Four were lesser included offenses of Count Two. Finally, he alleged newly discovered evidence of alibi in the form of an affidavit from Sheila Jasenec and that the Government withheld evidence that Dr. Sopher filed questionable autopsy reports in an unrelated case. On February 3, 1998, John W. Fisher, United States Magistrate Judge, filed a report and recommendation in which he recommended that the petitioner be denied the relief sought in his petition. On February 3, 1999, the Court adopted the recommendations of the Magistrate Judge, and entered an order denying petitioner's motion for relief pursuant to § 2255.

---

[3] The undersigned believes that the Fourth Circuit intended to say Count Two, not Four.

**D. 2244 Motion**

On November 20, 2012, the petitioner filed a motion with the Fourth Circuit Court of Appeals, seeking permission to file a successive habeas application. Relying on the Supreme Court's ruling in ***Skilling v. United States***, 561 U.S. 358 (2010), the petitioner argued that the jury instructions at his trial established that his conviction was based upon conduct for which the jury failed to find a guilty verdict beyond a reasonable doubt. On November 30, 2012, the Fourth Circuit denied the petitioner's § 2244 motion.

## II. Petitioner's Argument

In his pending habeas petition under § 2241, the petitioner is attacking both his conviction and sentence. The petitioner relies on the decision in ***Fowler v. United States***, 563 U.S. 668 (2011)[4] to argue that there is insufficient evidence to convict him under § 1512(a)(1)(C). The petitioner also maintains that he is actually innocent. For relief, the petitioner requests that the Court vacate his conviction on Count Two and leave the remaining conviction and sentences in place.

## III. Respondent's Argument

Respondent maintains that the petitioner cannot receive relief pursuant to 28 U.S.C. § 2241 because his motion more properly arises under § 2255, and the petitioner cannot demonstrate that § 2255 provides an inadequate and ineffective remedy. In addition, the

---

[4]In ***Fowler***, the defendant was convicted of murder with the "intent to prevent the communication of a federal law enforcement officer about the possible commission of a federal offense." 563 U.S. at 668. The Court held that "the Government must show a reasonable likelihood that...at least one relevant communication would have been made to a federal law enforcement officer," and the defendant had prevented that communication. 131 S.Ct. at 2052.

respondent argues that the petitioner has not demonstrated that he is actually innocent of his crime of conviction.

## IV. Petitioner's Reply

In his reply, relying on **Fowler**, Petitioner continues to argue that the Court improperly instructed the jury and relieved the Government of establishing a Federal nexus. In addition, Petitioner alleges that he is actually innocent because he was not present in the State of West Virginia at the time of Pugh's death. Finally, Petitioner alleges that the Court allowed the Government to put a recorded liar on the stand by using Dr. Irvin Sopher, M.D., the Chief Medical Examiner. Petitioner maintains that the Government knew that Dr. Sopher was charged with falsifying autopsy reports in state court and was pending trial where he was found guilty.[5]

With permission, Petitioner amended his reply to state that the Middle District of Pennsylvania applied **Fowler** to a § 2241 and granted the petitioner a new trial. *See United States v. Tyler*, 732 F.3d 241 (3d Cir. 2013).

## V. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

---

[5] As noted above, Petitioner unsuccessfully raised this issue in his § 2255 motion filed on July 10, 1997.

1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. ***Mylan Labs, Inc. v. Matkari***, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also **Martin***, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007) (quoting ***Conley v. Gibson***, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." ***Conley***, 355 U.S. at 45-46.  In ***Twombly***, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." ***Twombly***, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id*. (citations omitted), to one that is "plausible on its face," *id*. at 570, rather than merely "conceivable." *Id*.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." ***Bass v. E.I. DuPont de Nemours & Co.***, 324 F.3d 761, 765 (4th Cir. 2003) (citing ***Dickson v. Microsoft Corp.***, 309 F.3d 193, 213 (4th Cir. 2002); ***Iodice v. United States***, 289 F.3d 279, 281 (4th Cir. 2002)).  In so doing, the complaint must meet a

"plausibility" standard, instituted by the Supreme Court in **Ashcroft v. Iqbal**, where it held

that a "claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint

must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to

meet the plausibility standard and survive dismissal for failure to state a claim. **Id**.

## B.  Motion for Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary

judgment motions in habeas cases. See **Blackledge v. Allison**, 431 U.S. 63, 80 (1977).

So too, has the Fourth Circuit Court of Appeals. **Maynard v. Dixon**, 943 F.2d 407 (4th Cir.

1991).

Summary judgment is appropriate where the "depositions, documents, electronically

stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory

answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), show that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law,"

Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, a court reviews

all evidence "in the light most favorable" to the nonmoving party. **Providence Square

Assocs., L.L.C. v. G.D.F., Inc.**, 211 F.3d 846, 850 (4th Cir. 2000). It must limit its inquiry

solely to a determination of whether genuine issues of triable fact exist. See **Anderson v.

Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986).

Motions for summary judgment impose a difficult standard on the moving party; for

it must be obvious that no rational trier of fact could find for the nonmoving party. **Miller**

*v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir. 1990).  However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  *Id.*  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  *Anderson*, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## VI.  Analysis

In *United States v. Surratt*, __ F.3d __, 2015 WL 4591677 (4th Cir. July 31, 2015), Judge Agee synthesized the law concerning when a defendant may take advantage of the savings clause of 28 U.S.C. § 2255.  This Court will take the liberty of plagiarizing at length:

> In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress circumscribed the ability of federal prisoners to request post-conviction relief.  *See Rhines v. Weber,* 544 U.S. 269, 274 (2005).  Section 2555 provides the ordinary means for a federal prisoner to challenge his conviction or sentence.  But in AEDPA, Congress limited the jurisdiction of federal courts to hear second or successive requests under § 2255.  *See,*

*e.g., **In re Weathersby**, 717 F.3d 1108, 1110 (10th Cir. 2013) ("Congress placed strict limitations on second or successive motions under § 2255[.]").[FN*6]

Specifically, courts may hear second or successive petitions only if they pertain to (1) "newly discovered evidence ... [clearly and convincingly establishing] that no reasonable factfinder would have found the movant guilty of the offense" or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). We have already held that Surratt's claim does not fall into either of these categories, so § 2255(h) does not permit him to file a second or successive motion under § 2255.

If a federal prisoner cannot meet § 2255(h)'s requirements, then he may seek to file a traditional petition for writ of habeas corpus under 28 U.S.C. § 2241. But that right carries significant limits as well. Specifically, a prisoner "may file a habeas petition under § 2241 only if the collateral relief typically available under § 2255 'is inadequate or ineffective to test the legality of his detention.'" ***Prousalis v. Moore***, 751 F.3d 272, 275 (4th Cir. 2014) (quoting 28 U.S.C. § 2255(e)). If a federal prisoner brings a § 2241 petition that does not fall within the scope of this "savings clause," then the district court must dismiss the "unauthorized habeas motion ... for lack of

---

[6] Throughout its opinion, the Fourth Circuit omitted any internal marks, citations, emphasis, or footnotes from quotations unless otherwise noted.

jurisdiction," **Rice v. Rivera**, 617 F.3d 802, 807 (4th Cir. 2010), even if the Government supports the prisoner's position.

Surratt is a federal prisoner who means to file a § 2241 petition for post-conviction relief. Therefore, we must assess whether § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). We consider that question de novo. *See* **Yi v. Fed. Bureau of Prisons**, 412 F.3d 526, 530 (4th Cir. 2005).

. . .

We have determined that § 2255 was inadequate or ineffective in only one prior instance. In that case, petitioner Byron Jones argued that **Bailey v. United States**, 516 U.S. 137 (1995), rendered his convictions for "use" of a firearm during a drug offense invalid. **In re Jones**, 226 F.3d 328, 329 (4th Cir. 2000). **Bailey** had overruled this circuit's understanding of what it meant to "use" a firearm, *id.* at 330 (citing **Bailey**, 516 U.S. at 143), and Jones contended that his conduct therefore did not amount to "use" under **Bailey's** reading of the term, *id.* at 334. Jones, however, had already filed a § 2255 motion before **Bailey**, and § 2255(h) barred him from filing another one. *Id.* at 330. We decided to award relief, deeming § 2255 "inadequate or ineffective to test the legality of a conviction" when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255

motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Jones,* 226 F.3d at 333–34.

In short, *Jones* opened a narrow gateway to § 2241 relief for certain prisoners found actually innocent of their offenses of conviction, allowing relief only where the acts for which the defendant was convicted are not a crime. Since then, we have focused on this aspect of *Jones*—actual innocence of a criminal act—when characterizing the decision. See, e.g., *Farrow v. Revell,* 541 F. App'x 327, 328–29 (4th Cir. 2013); *Darden v. Stephens,* 426 F. App'x 173, 174 (4th Cir. 2011); *Rice,* 617 F.3d at 807; *United States v. Poole,* 531 F.3d 263, 267 n. 7 (4th Cir. 2008). Other circuits also give substantial attention to the actual innocence aspect of *Jones* when discussing it. *See, e.g., Bryant v. Warden, FCC Coleman–Medium,* 738 F.3d 1253, 1280 (11th Cir. 2013); *Abernathy v. Wandes,* 713 F.3d 538, 546 n. 7 (10th Cir. 2013); *Stephens v. Herrera,* 464 F.3d 895, 898 (9th Cir. 2006); *Abdullah v. Hedrick,* 392 F.3d 957, 962 (8th Cir. 2004); *Cephas v. Nash,* 328 F.3d 98, 104 n. 6 (2d Cir. 2003); *Reyes–Requena v. United States,* 243 F.3d 893, 904 (5th Cir. 2001).

The dissent mistakenly tries to read the actual innocence requirement out of *Jones.* That course ignores the clear limitation in *Jones* that, before

the case can be used to invoke § 2255(e), the law must have changed "such that the conduct of which the prisoner was convicted is deemed not to be criminal." 226 F.3d at 334. The caveat wasn't accidental, but drew from the fundamental recognition that actual innocence of a crime is different from other circumstances. Indeed, **Jones** "agree[d] with the rationale" of other courts that made this principle even more explicit. *Id.* at 333; *see, e.g.,* **Triestman v. United States**, 124 F.3d 361, 378–79 (2d Cir. 1997) (permitting a **Bailey** claim to be brought via § 2241 in part because of the constitutional issues that would arise from refusing to hear an actual-innocence claim); *see also* **Jones**, 226 F.3d at 333 n. 3 ("[T]hese courts have focused on the more fundamental defect presented by a situation in which an individual is incarcerated for conduct that is not criminal[.]"). Were the dissent's approach right, **Jones** would permit any federal prisoner to bring any non-constitutional claim via § 2241 in any instance where the law relevant to that claim changed in the petitioner's favor at any time. That hardly describes "a limited number of circumstances" in which § 2255(e) would apply. **Jones**, 226 F.3d at 333.

**United States v Surratt**, __ F.3d __, 2015 WL 4591677 (4th Cir. July 31, 2015).

Under the above standard, Mr. Watkins is not eligible for relief. His application for leave to file a second or successive petition has been denied, leaving him only the narrow path of the savings clause. That path is also closed to the petitioner because he is not actually innocent of his offenses of conviction, allowing relief only where the acts for which

the defendant was convicted are not a crime. The acts for which the defendant was committed, the murder of a person who intended to report a federal crime to federal authorities is still a crime.

Even if the petitioner were able to surmount the procedural hurdles, he cannot prevail substantively. The jury was properly instructed and there is sufficient evidence to support the conviction on Count 2. In reviewing **Fowler**, it is important to note that the decision is not based upon constitutional grounds. Rather, **Fowler** is a case reviewing the sufficiency of the evidence. As noted above, in **Fowler**, the defendant was convicted of murder with the "intent to prevent the communication of a federal law enforcement officer about the possible commission of a federal offense." 563 U.S. at 668. The Court held that "the Government must show a reasonable likelihood that...at least one relevant communication would have been made to a federal law enforcement officer," and the defendant had prevented that communication. 131 S.Ct. at 2052.

The petitioner bases his claim on the assertion that there was no evidence that the victim was going to communicate with a federal law enforcement official. That position is belied by the testimony of at least two witnesses. The first witness, Robert J. Smith, testified that his family hired the victim to work on their farm. Mr. Smith testified concerning an incident between the victim and the petitioner, where the petitioner and his co-defendant both had firearms. During the confrontation, the victim "was going on profusely that she was going to expose everything about his drug dealing." [Trial trans. pp. 278-279].

Mr. Smith also described a conversation which occurred while he and the victim were shearing sheep:

Q.     And could you tell us whether or not Debbie appeared to be afraid or scared during that time?

A.     Very much so.

Q.     Did she tell you who she was afraid of?

A.     Yes.

Q.     Who was that?

A.     Mark and Ernie.

Q.     Did you have any discussions with her about going to the police?

A.     Yes.

Q.     What did she actually tell you?

A.     She told me that she was going to go to the federal because she didn't believe that the state and local would help her.

Q.     And did you give her any advice or any assistance as far as contacting any police officers?

A.     Yes.  One instance there was a narcotics - I am not sure what, officer in Lisbon by the name of Tom Smith, no relation, and she asked me to - she said, "I don't think the man believes me."  She said, "Maybe if you talk to him, he will listen to you."  This was like 10:30, 11:00 at night.  I said, "Well, okay."  So she called the Lisbon police and when she handed it over to me, he said, "Officer or Detective Tom Smith," and I said, "Calling in regards for Debbie Pugh."  And I told him the situation.  And I said, "She is very concerned for her life, and she is asking if she can get some

16

kind of federal protection - a federal protection plan, you know, witness protection

plan." And he said, "Well," he says, "We are looking into this case right now." He

says, "I told her I would get back to her." I said, "Well, I am her employee - or her

employer, and I am doing as she has requested. You know, I am following up and

saying there could be a problem here." He said, "Well, thank you for your time" type

of thing.

Q.     Did she ever discuss with you going to a federal grand jury?

A.     Yes.

Q.     And what did she ask you?

A.     She just asked me if I knew anything about what it was like to testify before the

federal, could they actually protect her if she turned evidence, quite a bit of evidence

over, how would she be involved? Would they change her name?

Q.     Do you recall an episode with a coin?

A.     Yes.

Q.     Could you tell us what happened, please.

A.     There was a white car that she was driving, I believe it was a Mercury. And it had

blown up. The motor overheated, and they towed it back. And she had gone

through this car, and there was some white powder and a coin.

Q.     Where was the coin from?

A.     The coin was  - she had gotten it from - Mark had had it in he car.

       . . .

Q.      Did Debbie show you this coin?

A.      Yes, sir.

Q.      And, in fact, did Debbie give you this coin?

A.      Yes, sir.

        . . .

Q.      Had Debbie inquired of you earlier about going to the federal government?

A.      Yes.

Q.      Was she looking for proof to take to the federal government?

A.      Yes.

Q.      Did she inquire of you as to whether this coin and the white powder would be sufficient proof to go to the federal government?

A.      Right.

[Trial trans. pp. 280-284].

        Another witness was Columbiana County, Ohio, Deputy Sheriff Marvin McKenzie, who testified concerning a conversation that he had with the victim:

Q.      And did you have a conversation with her?

A.      Right. She - when she got in - as I remember when she got in the cruiser, she said, I told her, I said, "I haven't seen you since you was just little." And she remembered and, of course, she knew me from working on St. Clair Township Police Department and the Sheriff's Department. She said that she was in some trouble. And I said,

18

you know, "What have you been doing?" And she says, "Well," she says, "I have gotten into some trouble. Somebody is going to kill me."

And I kind of laughed it off because many times as we hear people in my capacity, say someone is going to kill them, it is - you take it - I guess not lightly, but you hear it so much. And she seemed like she was kind of nervous, hyper, I don't know.

Q.    Did - could you tell whether or not she was in fear or scared?

A.    Seemed like she was scared. After I talked to her for a few minutes, she appeared as though she was very much concerned about what she was saying.

Q.    Did she give you any names?

A.    Yes, she did.

Q.    What name did she give you?

A.    She gave me one I thought was Mark Watson, but it was Mark Watkins, and the other one was Ernie Walton.

Q.    And did she tell you what she was planning to do?

A.    She said - I asked her, I said, "Why are they going to kill you?" And she says, "Because I am going to the feds." And I said, For what?"

Q.    Going to the feds?

A.    She was going to the feds, to the federal government. And I said, "Why?" And she says, "Because it involves dope."

. . .

Q.    Did you give her any advice?

A.    I told her, I said, "Well if this is the case, if this is the problem you are having," I said, "Why didn't you get out?  Why don't you get out of here, move in with somebody or, you know, in the meantime while you are contacting the people, whoever you are going to contact."

Q     Did you ever see her alive again?

A.    No, that was the last time.

[Trial trans. 248-50].

The above evidence is clearly sufficient to support a verdict which includes a reasonable likelihood that...at least one relevant communication would have been made to a federal law enforcement officer, and the defendant had prevented that communication.

The petitioner also contends that the Court gave instructions to the jury which violate *Fowler*.  Given the law at that point in time, one would think that bad instructions would have been given.  But they were not.

The portion of the charge objected to by the petitioner provides that:

In order to convict the defendants Mark Watkins and Delmar Walton or either of them of Count 2, the Government must prove each of the following essential elements beyond a reasonable doubt:

First, that the defendant knowingly and intentionally killed Deborah Pugh or did aid, abet, counsel, command, induce, procure, or did wilfully

cause another person to kill Deborah Pugh, and, second, that the defendant did so with the intent to prevent the communication by Deborah Pugh to a law enforcement officer of the United States of information relating to the commission or possible commission of a federal offense.

In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance, that the law enforcement officer is an officer or employee of the federal government, or a person authorized to act for or on behalf of the federal government, or serving the federal government as an advisor or consultant.

The term "any person" under this instruction is broader than the term "witness," and refers to any person who might communicate information relating to the commission or possible commission of a federal offense to a law enforcement officer of the United States.

[Trial trans. pp. 2064-65].

It is clear that the first paragraph of the above charge requires the jury, in order to convict, to find that the person to whom communication is prevented to be a federal law enforcement officer. While under **Fowler**, the Government is only required to prove that the reasonable likelihood of a communication to a federal law enforcement officer, these instructions require the jury to make such a finding beyond a reasonable doubt.

The second paragraph does not alter the requirement. It merely states that the defendant need not have been aware that the officer to whom the defendant was going to communicate was a federal officer. The Government must prove the intent on the part of

the victim to report the crime to a federal officer, but the Government need not prove that the defendant was aware of the federal status.  There is no fault in this instruction.

Likewise, the third paragraph provides no solace.  It merely states that the victim need not have been a witness in a proceeding.  Rather, any person who might communicate to the federal government is covered.  The Court understands that the defendant contends that the inclusion of "might" as opposed to "reasonable likelihood" makes the instruction defective.  This Court, however, finds the language of the first paragraph obviates any problem.  Furthermore, to the extent there might be a problem, any error is harmless in light of the overwhelming testimony that the victim intended to go to federal agents.

## Conclusion

Upon careful consideration of the above, this Court **ADOPTS** the Report and Recommendation **[Doc. 25]** for the reasons more fully stated therein.  Accordingly, the Respondent's Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause **[Doc. 13]** is **GRANTED**, and the petitioner's Objections **[Doc. 27]** are **OVERRULED**.  The § 2241 petition **[Doc. 1]** is **DENIED** and **DISMISSED WITH PREJUDICE**.  As such, this Court **DIRECTS** the Clerk to enter judgment in favor of the respondent and to **STRIKE** this case from the active docket of this Court.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** a certificate of appealability, finding that the petitioner has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein and to mail a copy to the *pro se* petitioner.

**DATED:** September 2, 2015.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE